# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CV-394 (NEB/HB) |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DEFAULT JUDGMENT |
| BRUCE KNOWLES; DAWN KNOWLES; TCF NATIONAL BANK; ANOKA COUNTY DIVISION OF PROPERTY, RECORDS AND TAXATION; MINNESOTA DEPARTMENT OF REVENUE; and LVNV FUNDING LLC, | |
| Defendants. | |

The United States brought this action to reduce to judgment Bruce Knowles's unpaid federal income tax liabilities for three separate years, and to enforce tax liens on the real property that he owns with his wife Dawn Knowles (together, "the Knowleses"). The unpaid tax liabilities (Count I) were resolved by stipulation in a prior order. (ECF No. 64 ("Stip."); ECF No. 66.) The remaining Count II seeks lien enforcement and the sale of the Knowleses' home (referred to by the parties as the "6th Street Property"). (ECF No. 1 ("Compl.") at 5–6, 20–25.) All parties except LVNV Funding LLC ("LVNV") entered into a Joint Stipulation agreeing to the distribution of the proceeds of the sale of the 6th Street Property. (ECF No. 40 ("Joint Stip.").) The United States now moves for summary judgment on Count II and for default judgment against LVNV. (ECF No. 70.) The

1

Knowleses are the only parties to oppose the motion; they seek to revise the Joint Stipulation. For the reasons below, the Court grants the United States' motion.

## BACKGROUND

The Knowleses reside at the 6th Street Property.[1] (Compl. ¶¶ 1, 6, 7; ECF No. 13 ("Knowleses' Ans.") ¶ 2; Compl. ¶ 21; Knowleses' Ans. ¶ 12.) They hold title to it in fee simple as joint tenants with right of survivorship. (Compl. ¶ 21; Knowleses' Ans. ¶ 12.) It is undisputed that Dawn Knowles owes no unpaid taxes to the United States. (*See* Compl. ¶ 7 (naming Dawn Knowles as a defendant because of her interest in the 6th Street Property).)

Bruce Knowles is, however, indebted to the United States for his unpaid federal income tax liabilities for tax years 2005, 2006, and 2015. (Stip.; ECF No. 66.) The Internal Revenue Service ("IRS") gave Bruce Knowles notices of the assessments and made demands for payment. (ECF No. 73 ("Fox Decl.") ¶¶ 7–9; Exs. 1–3.) Notwithstanding those notices and demands for payment, Bruce Knowles has failed to fully pay his tax liabilities. (Stip.)

---

[1] The legal description of the 6th Street Property is "Lots Nine and Ten (9 & 10), Block Fifteen (15), Hamilton's Addition to Mechanicsville, Anoka County, according to the plat thereof on file in the office of the Register of Deeds in and for said Anoka County." (ECF No. 1 ("Compl.") ¶ 21.)

## I.      The Complaint

In February 2019, the United States filed this action seeking to reduce to judgment Bruce Knowles's unpaid federal income tax liabilities (Count I) and enforce the federal tax liens attached to his interest in the 6th Street Property (Count II). (Compl.) Counts I and II name Bruce Knowles as a defendant because of his tax liability and his interest in the 6th Street Property. Dawn Knowles, the Anoka County Division of Property, Records and Taxation ("Anoka County"), TCF National Bank ("TCF Bank"), the Minnesota Department of Revenue ("MNDOR"), and LVNV Funding LLC ("LVNV") are named as defendants to Count II pursuant to 26 U.S.C. Section 7403(b), because each has or may claim an interest in the 6th Street Property. (Compl. ¶¶ 7–11.) TCF Bank holds a lien interest in the 6th Street Property as a result of a mortgage securing a revolving line of credit granted to the Knowleses.[2] (Joint Stip. ¶ 5; ECF No. 86 ("2d Fox Decl."), Ex. 6.) LVNV is the only defendant who did not file an appearance and answer the Complaint in this case.

## II.      The Stipulations

In September 2019, the United States, the Knowleses, TCF Bank, Anoka County, and MNDOR entered into a joint stipulation about the federal income tax liabilities that

---

[2] While not at issue in this motion, Anoka County holds a lien interest in the property as a result of unpaid real property taxes assessed against the property for tax years 2009, 2011, 2013, and 2014, and MNDOR holds a lien interest in the property as a result of outstanding state tax liens against Bruce Knowles for unpaid state income tax liabilities for tax years 2013 through 2015. (Joint Stip. ¶¶ 7–8.)

Bruce Knowles owed. (Joint Stip. ¶ 6.) They also stipulated that if the Court orders the

judicial sale of the 6th Street Property and the property is sold, then the net proceeds from

such sale shall be distributed as follows:

> a. *First*, to the United States for the costs and expenses that it incurs in
> selling the property;
>
> b. *Second*, to [Anoka] County, for real property taxes and other local
> assessments that may be due and owing and are entitled to priority under
> 26 U.S.C. § 6323(b)(6);
>
> c. *Third*, to TCF Bank, in the amount of its mortgage lien interest [in the 6th
> Street Property], up to the outstanding balance of the line of credit secured
> by [its mortgage agreement dated August 12, 2004, and recorded in Anoka
> County, Minnesota, on August 25, 2005];
>
> d. *Fourth*, the remaining net sale proceeds shall be paid as follows:
>
>> i. one-half to Dawn Knowles [for her interest in the property]; and
>>
>> ii. one-half to the United States, to be applied toward Bruce Knowles'
>> unpaid federal income tax liabilities for tax years 2005, 2006, and 2015.
>
> e. Any remaining net sale proceeds after payments listed above are made
> shall be paid to MNDOR, to be applied toward Bruce Knowles' unpaid state
> income tax liabilities for 2013 through 2015.
>
> f. If there are still remaining net sale proceeds following the[se]
> distributions . . ., then the remaining proceeds shall be paid to Bruce
> Knowles.

(*Id.* ¶ 9.)

In June 2020, the United States and Bruce Knowles entered into a stipulation for

entry of a consent judgment on Count I in the amount of $104,766.73 for his unpaid

federal income tax liabilities for tax years 2005, 2006, and 2015, plus statutory interest.

(Stip.) The Court entered judgment in favor of the United States on Count I in the amount sought for the delinquent years. (ECF No. 66.)

In its motion, the United States asks that the Court grant summary judgment on Count II and order the sale of the 6th Street Property with the proceeds to be distributed according to the Joint Stipulation. In response, Anoka County, TCF Bank, and MNDOR filed letters stating that they take no position on the motion for summary judgment. (ECF Nos. 75–77.) The Knowleses oppose the motion. (ECF No. 84.)[3]

### III.   LVNV

The United States served the summons and Complaint on LVNV's registered agent on April 29, 2019. (ECF No. 16; ECF No. 25 ¶ 5; *id.*, Ex. A.) When LVNV failed to answer or respond to the Complaint, the United States filed for entry of default. (ECF Nos. 22–25.) The Clerk entered a Clerk's Entry of Default against LVNV on June 18, 2019. (ECF No. 26.)

The United States now moves for default judgment against LVNV. On October 29, 2020, the United States served LVNV and its registered agent with the motion for summary judgment and default judgment, supporting filings, and notice of the hearing on this motion. (ECF No. 87.) LVNV did not respond to the motion or appear at the hearing on the motion.

---

[3] The page numbers cited in the Knowleses' brief and exhibits at ECF No. 84 are the ECF page numbers.

## ANALYSIS

### I.     Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences supported by the evidence. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[4]

### A.     *Valid and Subsisting Liens*

The Court finds that the United States has offered sufficient proof of its claim to enforce its federal tax liens against the 6th Street Property. "When a person liable to pay a federal tax fails to do so after a demand for payment is made, the amount of the tax, together with interest, additions, penalties, and costs, becomes a lien in favor of the

---

[4] After the Knowleses attached several exhibits directly to their opposition brief, (ECF No. 84 at 13–79), the United States objected to these documents for failing to be authenticated by, and attached to, an affidavit made on personal knowledge. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000). Prior to the hearing, the Knowleses filed affidavits in an attempt to authenticate their exhibits. (ECF Nos. 88–90.) Because the United States has not argued that the affidavits are insufficient, the Court will consider these exhibits as it deems appropriate in deciding the motion for summary judgment.

United States upon all real and personal property and all rights to property belonging to the delinquent taxpayer." *Minn. Dep't of Revenue v. United States*, 184 F.3d 725, 728 (8th Cir. 1999), citing 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."). "If the taxpayer does not pay the amount assessed, then the amount automatically becomes a tax lien on all property belonging to the taxpayer, . . . and the IRS may proceed with further collection actions." *Pagonis v. United States*, 575 F.3d 809, 812 (8th Cir. 2009).

Here, Bruce Knowles stipulated that he owes and failed to pay his federal income tax liabilities for tax years 2005, 2006, and 2015, and the Court has entered judgment on Count I. (Stip.; ECF No. 66.) The United States offers proof establishing that it notified Bruce Knowles of the assessments and made demands for payment. (Fox Decl., Exs. 1–3.) It is undisputed that Bruce Knowles and Dawn Knowles hold title to the 6th Street Property in fee simple as joint tenants. No defendant raises any issue of fact as to the validity of the liens. The Court therefore finds that the United States holds valid federal tax liens that attach to all of Bruce Knowles's property and property rights, including the 6th Street Property.

B.      *Enforcement of the Tax Liens Against the 6th Street Property*

The United States asks the Court to order that the federal tax liens be enforced against the 6th Street Property and order the sale of the property to satisfy Bruce Knowles's debts under 26 U.S.C. Section 7403. As required under Section 7403(b), the United States joined all parties who may claim an interest in the 6th Street Property to this suit. (Compl. ¶¶ 7–11.) Section 7403(c) provides that where a claim or interest of the United States is established, the court "may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). The court may decree such a sale even if a non-liable third party also has an interest in the property, so long as the third party receives compensation. *United States v. Rodgers*, 461 U.S. 677, 693–94 (1983); *United States v. Bierbrauer*, 936 F.2d 373, 374 (8th Cir. 1991). Based on Dawn Knowles's interest in the property as a non-liable third party, the Knowleses ask the Court to exercise its limited discretion under Section 7403 to decline to order the sale.

Section 7403 "does not require a district court to authorize a forced sale under absolutely all circumstances, and [] some limited room is left in the statute for the exercise of reasoned discretion." *Rodgers*, 461 U.S. at 706. In *Rodgers*, the Supreme Court provided a non-exhaustive list of factors that district courts should consider in determining whether to order a forced sale of property: (1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial

interest actually liable for the delinquent taxes;" (2) whether the non-liable third party had "a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;" (3) the likely prejudice to the non-liable third party "in personal dislocation costs and . . . undercompensation;" and (4) "the relative character and value of the non-liable and liable interests held in the property." *Id.* at 710–11. These factors should not be used "as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances," but "the limited discretion accorded by [Section] 7403 should be exercised *rigorously and sparingly*, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *Id.* at 711 (emphasis added).

As for the first factor, the United States would be prejudiced by being forced to sell a one-half interest in the 6th Street Property; it is unlikely that a buyer exists who would purchase a one-half interest of the residence when Dawn Knowles would retain her interest in and right to possess the property. *See Bierbrauer*, 936 F.2d at 376 (finding that the first factor weighed in favor of the government where there was "no real prospect" that the tax payer's interest in a co-owned property could be sold separately). Nor do the Knowleses propose a partial sale. (ECF No. 84 at 10.) Thus, this factor favors authorizing the sale of the entire property.

The second factor is whether Dawn Knowles expected the property to be protected from a foreclosure sale. The Knowleses claim Dawn Knowles never imagined that her

joint tenancy would result in a foreclosure. They maintain that if a Minnesota person or entity had brought this action, Dawn's interest would be protected by Minnesota's homestead exemption statute. Minn. Stat. § 510.01. But Minnesota's homestead exemption does not extend to any lawful mortgage or "valid lien for taxes or assessments." Minn. Stat. § 510.05. Given Minnesota's "non-absolute protection for one's homestead rights," Dawn Knowles "could not have had a 'legally recognized expectation' that the [Sixth Street] Property would never be the subject of a forced sale." *United States v. Munger*, No. 01-CV-1536 (JNE/JGL), 2003 WL 22872766, at *4 (D. Minn. Oct. 20, 2003); *see United States v. Robbin*, No. 16-CV-83 (DWF/LIB), 2017 WL 3425645, at *4 (D. Minn. Aug. 9, 2017) ("Courts have routinely allowed forced sales of property jointly owned by a husband and wife to satisfy federal tax liens."); *United States v. Hanson*, No. 03-CV-6562 (ADM/JSM), 2005 WL 3116099, at *3 (D. Minn. Apr. 21, 2005) ("[T]he Minnesota homestead exemption can not [*sic*] trump the Government's ability to collect taxes"). Thus, the second *Rodgers* factor also favors the property sale. *See Rodgers*, 461 U.S. at 702 ("Whatever property rights attach to a homestead under [state] law are adequately discharged by the payment of compensation, and no further deference to state law is required, either by § 7403 or by the Constitution.").

The remaining two factors focus on the prejudicial effect the sale is likely to have on the third party and the "relative character and value of the non-liable and liable interests held in the property." *Rodgers*, 461 U.S. at 711. The Knowleses make the same

argument for both factors: that the 6th Street Property is the house Dawn Knowles grew

up in, and no amount of money will buy a replacement. (ECF No. 84 at 11.)

> It is true, but legally irrelevant, that this property formerly belonged to
> [Dawn Knowles's] parents. . . . [She] has a possessory interest in the home,
> but it is no greater than [Bruce Knowles's] interest, and worth no more than
> about half the value of the property. Thus, the government is not
> dispossessing an innocent third party who has a substantially greater
> possessory or fee interest than the delinquent taxpayer's interest.

*Bierbrauer*, 936 F.2d at 376. "[T]he inherent indignity and inequity of being removed from

one's home" alone is not sufficient to "tip the scales" in favor of the non-liable third party;

if it was, "the government could never foreclose against a jointly owned residence—a

result clearly untenable under [Section] 7403." *Id.* at 375–76. Here, Bruce and Dawn

Knowles own the 6th Street Property equally as joint tenants. Nothing suggests that

Dawn Knowles will not be adequately compensated for her interest in the 6th Street

Property, despite her claim that no amount of money will compensate her. *See Robbin*,

2017 WL 3425645, at *4 ("Robbin will not be undercompensated because she will receive

50% of the proceeds . . . after the mortgage is paid."). The Court cannot exercise its

discretion based on Dawn Knowles's history with the property.

For these reasons, the Court orders the enforcement of the federal tax liens against

all property and rights to property of Bruce Knowles, including the 6th Street Property.

The 6th Street Property shall be sold at a public judicial sale pursuant to a separate order

of this Court upon motion by the United States.

C.      *Distribution of Proceeds of Sale*

The Knowleses object to the distribution of the proceeds of the sale of the 6th Street

Property in accordance with the terms of the Joint Stipulation. They maintain that Dawn

Knowles should receive half of the proceeds from the sale before the distribution to TCF

Bank because the line of credit agreement securing the mortgage on the 6th Street

Property identifies only Bruce Knowles as the borrower and Dawn Knowles is not

personally liable for the line of credit.[5] (ECF No. 84 at 7–8.) The Knowleses seek to revise

paragraph nine of the Joint Stipulation to (1) prioritize the distribution of the net sale

proceeds to the Knowles over the distribution to TCF Bank by splitting the proceeds

between Bruce and Dawn Knowles, and then, (2) from Bruce Knowles's half of the

proceeds, pay the amounts owed first to TCF Bank and then the United States. (*Id.* at 9.)

The Knowleses claim that they should not have agreed to the Joint Stipulation and that

they signed it due to an "oversight." (*Id.*) "[S]tipulations of fact fairly entered into are

controlling and conclusive, and . . . relief from such stipulations will be granted only

---

[5] Dawn Knowles signed the line of credit agreement as a "collateral owner." (ECF No. 84 at 17, and ECF No. 89 (together, "Knowles Ex. 2").) The agreement states in part:

> By signing below as a collateral owner, you give us a security interest in the collateral securing this Agreement or a separate mortgage on real estate to protect us if the Borrower [Bruce Knowles] . . . defaults under this Agreement. . . . *You will have no personal obligation to repay this Agreement, but you agree that we [TCF Bank] have all of the rights in the collateral securing this Agreement* as provided by this Agreement or *if secured by real estate as provided in this Agreement and the mortgage.*

(*Id.* (emphasis added).)

under exceptional circumstances." *Sims v. Wyrick*, 743 F.2d 607, 610 (8th Cir. 1984). Here, the Knowleses have not shown that relief from the Joint Stipulation is warranted.[6]

In arguing that Dawn Knowles should be paid from the sale proceeds before TCF Bank because she is not personally liable for the line of credit, the Knowleses essentially ask the Court to ignore the mortgage that gives TCF Bank its lien interest in the 6th Street Property. (Joint Stip. ¶ 5 ("TCF Bank holds a lien interest in the [6th Street] Property as a result of a mortgage . . .").) The Knowleses offer nothing to indicate that the mortgage limits TCF Bank's lien interest to only Bruce Knowles's interest in the 6th Street Property. Rather, the evidence shows that Bruce and Dawn Knowles jointly granted the mortgage "as husband and wife" on the entire 6th Street Property. (2d Fox Decl., Ex. 6 at 1, Schedule A.) Thus, the mortgage encumbers the real property interest of both Bruce and Dawn Knowles.

Even if Dawn Knowles is not personally liable under the line of credit agreement, "no such personal liability is necessary to render the mortgage valid." *F.D.I.C. v.*

---

[6] The Knowleses argue that a scrivener's error exists in paragraph five of the Joint Stipulation, which states: "TCF Bank holds a lien interest in the [6th Street] Property as a result of a mortgage securing a revolving line of credit granted to Bruce Knowles *and Dawn Knowles* ('Mortgage')." (Joint Stip. ¶ 5 (emphasis added).) They seek to omit "and Dawn Knowles" from this sentence. (ECF No. 84 at 8.) The United States acknowledges that the sentence in paragraph five could have been more carefully worded. The Court finds no merit in the "scrivener's error" argument. The sentence at issue defines the term "Mortgage"—a contract Dawn Knowles indisputably entered. Even if an error exists, the inclusion of Dawn Knowles is immaterial because no party asserts that she is personally liable for the line of credit.

*Hennessee*, No. CIV-88-1205-T, 1989 WL 303515, at *4 (W.D. Okla. June 27, 1989). A mortgage may be given to secure the debt of a third-party—like Bruce Knowles's line of credit—"if sufficient consideration exists for the mortgage." *In re Janis*, 151 B.R. 936, 938 (D. Ariz. 1992). Here, Dawn Knowles's consideration for the mortgage is the line of credit issued to her husband.[7] *See Riddle v. La Salle Nat'l Bank*, 180 N.E.2d 719, 721 (Ill. App. Ct. 1962) ("The consideration for a mortgage need not move directly from the mortgagee to the mortgagor. The consideration may consist in a loan to a third person."); *Hennessee*, 1989 WL 303515, at *4 ("[C]onsideration necessary to support a mortgage may include any benefit conferred on the mortgagor or any detriment incurred by the mortgagee."); *Seattle-First Nat'l Bank v. Hart*, 573 P.2d 827, 829 (Wash. Ct. App. 1978) ("A mortgage may be given to guarantee the debt of another, and if he or the mortgagor benefits thereby there is sufficient consideration for the mortgage.") (quoting *Riddle*, 180 N.E.2d at 721). Because the mortgage applies to the entire 6th Street Property, it is appropriate for TCF Bank to be paid out of the proceeds from the entire property.

Finally, the Knowleses insist that they have the ability to satisfy the federal tax liens by refinancing the 6th Street Property. (ECF No. 84 at 12.) It appears to the Court

---

[7] At the hearing, the Knowleses argued that because the mortgage was not in foreclosure, the Court should disregard the mortgage and focus on Dawn Knowles's lack of personal liability under the line of credit agreement. But the issue is which parties have a legal right, claim, or interest in the 6th Street Property. TCF Bank's lien interest in the 6th Street Property is based on the mortgage signed by both Bruce and Dawn Knowles. (Joint Stip. ¶ 5; Fox Decl., Ex 6.)

that the Knowleses have had ample opportunity to refinance in order to borrow money to satisfy the liens. The Complaint was filed in February 2019, and the Joint Stipulation was entered in September 2019. (Compl.; Joint Stip.) The Knowleses have known for well over a year that the 6th Street Property would be sold if Bruce Knowles did not satisfy the federal tax liens. Although they claim to be in a position to refinance, to date, they have not done so.

For these reasons, the Court grants the motion for summary judgment on Count II. Upon the United States' motion, the Court will order the sale of the 6th Street Property to satisfy the federal tax liens, with the proceeds of such sale to be distributed according to the Joint Stipulation. Due to the ongoing COVID-19 pandemic, the Court will give the United States 180 days in which to file such motion.

## II.    Motion for Default Judgment

The United States also moves for default judgment against defendant LVNV. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Court may enter a default judgment against a defendant against whom a default has been entered for failing to plead or otherwise defend. Fed. R. Civ. P. 55. There is a two-step process for the entry of a default judgment. *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1988). First, the moving party must seek a default from the Clerk of Court, and the Clerk must enter default based on proof that the opposing party has failed to plead or defend against the action. Fed. R. Civ. P. 55(a). Second, the moving party must seek entry of default

judgment from the Court. Fed. R. Civ. P. 55(b). Here, LVNV failed to answer the Complaint or otherwise appear in this matter, and the Clerk has entered default against it. (ECF No. 26.) Thus, this matter is ripe for entry of default judgment.

"Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation and quotation marks omitted); *see also* Fed. R. Civ. P. 8(b)(6). The Complaint alleges sufficient facts to warrant a judgment against LVNV because it alleges that LVNV may claim a right in the 6th Street Property. (Compl. ¶ 11.) "A defendant's failure to assert an interest where a foreclosure complaint alleges that a defendant may have an interest in such foreclosure property, justifies a judgment extinguishing that interest." *United States v. Jackson*, No. 1:12CV1075 (LMB/IDD), 2013 WL 6989404, at *6 (E.D. Va. Aug. 5, 2013), *report and recommendation adopted*, 2013 WL 6073515 (E.D. Va. Nov. 18, 2013) (granting default judgment for foreclosure of a federal tax lien where defendant failed to assert an interest in the property to be foreclosed); *see United States v. Ness*, No. 17-CV-1243 (JRT/LIB), 2018 WL 2095607, at *1 (D. Minn. May 7, 2018) (granting default judgment against parties who may have had an interest in property subject to a tax lien but did not assert an interest in the property). Because LVNV failed to plead or otherwise defend the

alleged claim to a right in the 6th Street Property, Fed. R. Civ. P. 55, the Court grants the motion for entry of default judgment against LVNV.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  The United States' motion for summary judgment and default judgment (ECF No. 70) is GRANTED;

2.  The United States' federal tax liens for Bruce Knowles' 2005, 2006, and 2015 federal income tax liabilities are valid and subsisting liens in favor of the United States that attached all property and rights to property belonging to Bruce Knowles;

3.  These federal tax liens are enforced against all of Bruce Knowles's property and property rights, including his interest in real property located in the 6th Street Property;

4.  The 6th Street Property shall be sold pursuant to a separate order of this Court upon motion by the United States;

5.  Within 180 days of this order, the United States shall submit a proposed order of sale regarding the 6th Street Property, or shall submit a letter explaining why the Court should further wait to enter an order of sale;

6.      The proceeds from any sale of the 6th Street Property shall be distributed

as follows:

a.      *First,* to the United States for the costs and expenses that it incurs in

selling the property;

b.      *Second*, to Anoka County, for real property taxes and other local

assessments that may be due and owing and are entitled to priority

under 26 U.S.C. § 6323(b)(6);

c.      *Third*, to TCF Bank, in the amount of its lien interest in the 6th Street

Property, up to the outstanding balance of the line of credit secured

by its mortgage agreement dated August 12, 2004, and recorded in

Anoka County, Minnesota, on August 25, 2005;

d.      *Fourth,* the remaining net sale proceeds shall be paid as follows:

i.      one-half to Dawn Knowles for her interest in the property;

and

ii.     one-half to the United States, to be applied toward Bruce

Knowles's unpaid federal income tax liabilities for tax years 2005,

2006, and 2015;

e.      Any remaining net sale proceeds after the payments listed above are

made shall be paid to MNDOR, to be applied toward Bruce

Knowles's unpaid Minnesota state income tax liabilities for tax years 2013 through 2015;

f.    If there are still remaining net sale proceeds following the distributions provided paragraphs 6(a) through 6(e) above, then the remaining proceeds shall be paid to Bruce Knowles.

7.    The Court declares that LVNV Funding LLC has failed to assert any right, claim, or interest in the 6th Street Property. Accordingly, the Court concludes that LVNV Funding LLC has no right, claim, or interest in any proceeds from any sale of the 6th Street Property. The 6th Street Property shall be sold free and clear of any rights, claims, or interests that LVNV Funding LLC may have asserted in the property; and

8.    The Clerk shall ENTER JUDGMENT against LVNV Funding LLC.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: December 21, 2020                    BY THE COURT:

                                            s/Nancy E. Brasel
                                            Nancy E. Brasel
                                            United States District Judge